816

## SMOOT v. CONSOLIDATION COAL CO.

Court of Appeals of District of Columbia. Argued December 4, 1929. Decided January 6, 1930.

No. 4782.

Wm. G. Johnson and George W. Offutt, both of Washington, D. C., for appellant.

Conrad H. Syme, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District in an action by appellant to recover $10,212.79, the depreciated value of appliances left on premises at the termination of a lease from defendant below (appellee) to plaintiff below (appellant) and theretofore exclusively used in connection with plaintiff's sand and gravel business.

In January, 1912, plaintiff was engaged in the District of Columbia in a sand and gravel business of considerable volume. Defendant was engaged in the shipment of coal to and from the District, and in connection therewith occupied land lying between Thirtieth street, the Chesapeake & Ohio canal, and the Potomac river. This site was in the control of the Chesapeake & Ohio Canal Company, and the defendant coal company was a tenant at sufferance.

As the result of negotiations between the plaintiff and defendant, on January 23, 1912, they entered into an agreement of lease by the defendant to the plaintiff and concurrently a contract for coal handling by plaintiff for defendant. Under the agreement the defendant was to construct for the use of the plaintiff a double track, switches, etc. Within 60 days after the completion of this work, plaintiff was to provide "at the demised premises efficient and sufficient plant and machinery and operating force of laborers to handle six hundred tons of coal per day from canal boats to barges or vessels in the river." Plaintiff was to give and did give a bond to defendant in the sum of $50,000 conditioned for the construction of the plant for handling coal and providing the necessary operating force. In the lease, which was to cover a period of ten years, it was "provided that at any time after the expiration of the first year of the term hereby demised, the lessor shall have the right to determine and put an end to the term hereby demised upon giving written notice of such intention six months before the day on which such term is to be determined."

Paragraph 17 of the contract provides:

"It is further agreed that the Coal Company shall not have the right to exercise the privilege of terminating said lease upon six months notice except upon two conditions, namely; in the event of the termination of its own right of possession by title paramount or in the event of the increase of the rent payable by it to an amount which the said Contractor (plaintiff) may be unwilling to pay.

"It is further agreed that upon the termination of said tenancy by the expiration of the ten year term by said lease demised, by title paramount or by the exercise of the privilege of termination upon six months notice, the Coal Company shall purchase from the Contractor the plant herein agreed to be constructed, the price therefor to be determined as follows:

"A. The actual original cost of said plant and any additions thereto to be shown by proper book accounts to be kept at the time of such expenditures for all grading, concrete construction, masonry walls along river front, removal of present pile bulkheads, construction of scales for weighing house, remodeling marine railway, building roadways, construction of weighmasters office, for the new pile bulkheads, the steel tower and weighing devices for coaling tugs and small vessels, and all machinery, fixed or movable for loading and unloading coal, and all other

machinery, fixed or movable, tools, implements or appliances constituting any part of the plant of the said Contractor at or upon said demised premises (except floating appliances), less a reasonable depreciation based upon the actual condition of the property taken over at the time of estimation," etc.

In 1915 plaintiff erected for the exclusive use of his sand business, and upon the portion of the property which he used for that business, a sand hopper at a cost of $1,637.15. In 1917 he erected a conveyor belt and extension to this hopper at a cost of $6,716.41. In 1920 he erected another sand hopper at a cost of $6,306.15. All of these appliances were installed without any notice to defendant, and plaintiff made no claim for reimbursement for any of them until at or about the termination of the lease on January 22, 1922.

The case was tried by the court without a jury, and the learned judge below found as a fact that all of the appliances for which recovery is sought "were constructed and used by the plaintiff exclusively for his sand and gravel business; no part thereof was ever used or was necessary for the handling of coal by the plaintiff for the defendant. The same was firmly fixed to that part of the demised land used for plaintiff's sand and gravel business of which the plaintiff had sole and exclusive use under the lease and contract, and no part thereof was on any part of the demised land of which defendant had the use under the contract with plaintiff."

There is no mention in either the contract, lease, or bond, of the sand and gravel business, but in paragraph 12 of the contract it is provided that: "The Contractor (plaintiff) shall at all times have the free and exclusive use of the railroad sidings for the transportation of any class of freight on his own account or for others, provided no interruption is occasioned to the handling of the Coal Company's coal and also provided that under no circumstances shall any coal be transported, stored or handled on the demised premises or any part thereof other than the coal of the Coal Company without the written consent of both parties, as to the specific coal so stored, transported or handled."

The intent of the parties must, of course, be gathered from the provisions of the contract, lease, and bond. Under paragraph 4 of the contract, plaintiff obligated himself to install on "the demised premises efficient and sufficient plant and machinery and operating force of laborers to handle six hundred tons of coal per day." So far as the coal company was concerned, he was under no obligation to install any other machinery on the premises. Under paragraph 12 of the contract, if plaintiff desired to use the railroad sidings "for the transportation of any class of freight on his own account or for others," he was at liberty to do so, provided there should be no interruption to the handling of the coal company's coal. Under paragraph 17, the parties agreed that at the termination of the lease "the Coal Company shall purchase from the Contractor *the plant herein agreed to be constructed*, the price therefor to be determined as follows. * * * *" (Italics ours.) The only plant agreed to be constructed was a plant for the handling of coal and covered by paragraph 4 of the contract.

Counsel for plaintiff contend that the clause, "and all other machinery, fixed or movable, tools, implements or appliances constituting any part of the plant of the said Contractor at or upon said demised premises," should be construed as including appliances for the use of the sand and gravel business. To this we cannot assent. The contract first identifies the thing to be purchased, that is, the coal plant; and then provides how "the price therefor" shall be determined. The clause to which counsel for plaintiff attach significance relates to "the plant herein agreed to be constructed," and none other. This general clause was meant to cover things entering in the construction of the coal handling plant not specifically covered by what preceded it. According to the findings of fact, when this contract was entered into the parties contemplated that plaintiff might use part of the premises for "the construction thereon of a plant for handling of sand and gravel for the plaintiff and for handling coal for the defendant." That defendant was not interested in the sand and gravel business is apparent from the failure of the contract even to mention it; but defendant was interested in the coal business, and the contract therefore imposed upon the plaintiff the duty of providing "efficient and sufficient plant and machinery and operating force" to handle that business. This was the plant that the parties in their contract agreed should be purchased from the plaintiff at the termination of the lease. It is inconceivable that if the parties had contemplated that the defendant should purchase the sand and gravel appliances they would not have so provided in plain and unambiguous terms. That the language used in the contract is not rea-

818

sonably susceptible to such a construction is so plain that further discussion is unnecessary.

It results that the judgment is affirmed, with costs.

Affirmed.